## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## FT. MYERS DIVISION

MANUEL HERNANDEZ,

      Plaintiff,

v.                                          CASE NO. 2:09-CV-747-FtM-36SPC

WILSONART INTERNATIONAL, INC.,

      Defendant.

_____/

## <u>ORDER</u>

**THIS CAUSE** is before the Court on Defendant's Motion for Final Summary Judgment, filed on October 1, 2010 (Dkt. 51).  Plaintiff filed a response in opposition to the Motion on November 10, 2010 (Dkt. 66), to which Defendant replied (Dkt. 70).  Thereafter, Plaintiff filed a sur-reply (Dkt. 75).  For the reasons stated below, the Court will grant Defendant's Motion for Final Summary Judgment.

## I.    <u>UNDISPUTED FACTS</u>

### A.    **Dynamex Employment**

In August 2004, Wilsonart International, Inc. ("Defendant" or "Wilsonart") entered into a Master Transportation Services Agreement with Dynamex, Inc. ("Dynamex") (Dkt. 52, Ex. 7). Pursuant to the contract, Dynamex furnished truck drivers to perform delivery services for Wilsonart from its five Florida warehouse facilities.  *Id*.  Under the terms of the Agreement, Dynamex was solely responsible for hiring professional drivers and ensuring that they were qualified to drive commercial motor vehicles pursuant to the U.S. Department of Transportation's ("DOT") regulations (Dkt. 52, Ex. 1, pp. 12, 14; Ex. 7).

Manuel Hernandez ("Plaintiff" or "Hernandez") was employed with Dynamex beginning in November 2005 (Dkt. 16, ¶10; Dkt. 52, Ex. 2, p. 59). Hernandez was one of three Dynamex drivers working out of Wilsonart's warehouse facility in Ft. Myers (Dkt. 52, Ex. 2, pp. 66-67). Prior to working for Dynamex, Hernandez was an owner and truck driver for ZMG Trucking (Dkt. 52, Ex. 2, pp. 59-60). Hernandez worked for ZMG Trucking for approximately two to three years (Dkt. 52, Ex. 8, Att. 24).[1] As a driver, Hernandez had a Class B Commercial Driving License ("CDL") with an endorsement to transport hazardous materials ("hazmat endorsement") since 2003 (Dkt. 58, Ex. 3).

At the beginning of July 2006, Hernandez's supervisor was terminated, and Carl Renninger was hired as Hernandez's new supervisor and the lead driver (Dkt. 52, Ex. 1, p. 14; Ex. 2, p. 77). Renninger was supervised by Tom Grear who was the Distribution Manager of Wilsonart's Fort Myers facility at the time (Dkt. 52, Ex. 9, ¶¶4-5).

When he worked for Dynamex, Hernandez delivered Wilsonart's products to its customers (Dkt. 52, Ex. 2, pp. 66-67). During his two-year time period as a driver for Dynamex, Hernandez was involved in a rear-end collision on August 10, 2006 and received a traffic citation in June 2007 for following too closely, which he contested and won (Dkt. 52, Ex. 8; Dkt. 52, Ex. 2, p. 77).

B.      **Driver Positions at Wilsonart**

When the Dynamex contract termination date neared in 2007, Wilsonart decided to hire its own drivers for its Florida facilities to begin working in September 2007 (Dkt. 52, Ex. 3, p. 81; Ex.

---

[1] Based on Hernandez's employment history form, he worked for ZMG Trucking from either 2002 or 2003 to 2005.

6, pp. 12-13).  Wilsonart also decided to consolidate the three Fort Myers drivers' routes and hire

two drivers to service those routes (Dkt. 52, Ex. 9, ¶7).

1.    *Job Announcement*

Around July 1, 2007, Wilsonart placed an ad for the driver positions in the local newspaper

and on the internet (Dkt. 60, Ex. 13; Dkt. 52, Ex. 1, pp. 24-25; Dkt. 52, Ex. 7, Att. 3B).  The ad for

the driver positions stated that the required experience was:

> One year driving experience.  No chargeable accidents in the past
> three (3) years.  Knowledge of Department of Transportation and
> state regulations and local laws pertaining to vehicle operations.
> Must have a valid Class "B" CDL, with hazmat endorsement.

(Dkt. 52, Ex. 7, Att. 3B).[2]

Wilsonart also advised the Dynamex drivers of the openings and invited them to apply (Dkt.

52, Ex. 1, pp. 41-42; Dkt. 52, Ex. 5, pp. 12-13).  Prior to inviting Dynamex drivers to apply,

Wilsonart had to receive permission from Dynamex to contact the drivers (Dkt. 52, Ex. 10, ¶6).

As part of the hiring process, Wilsonart required candidates to complete and submit two

applications: 1) a general employment application; and 2) a driver's application (Dkt. 52, Ex. 1, pp.

50-52).  Grear was directed to interview applicants for the driver positions with Wilsonart (Dkt. 52,

Ex. 1, p. 24).  Then Grear was instructed to pick the two best candidates and forward their

information to Katie Holloway, the regional manager.  *Id*.  If the applicant met the requirements at

the initial stage, then the regional office would have the applicant fill out the release forms to do the

background check that would give Tommy Williams, Wilsonart's Transportation Manager,

---

[2] Wilsonart's general job description for the truck driver position stated that the driver must have a CDL with a hazardous material certification in addition to one year experience in local driving (Dkt.60, Ex. 6).

permission to obtain past employment, driver's license and criminal information  (Dkt. 52, Ex. 1, pp. 50-52).  Williams instructed the managers that if there were any gaps in employment, the candidates would need to supplement their applications to explain the gaps (Dkt. 52, Ex.1, p.28).

The "employment history" portion of Wilsonart's general employment application instructs the applicant to "[a]ccount for all full-time or part-time employment and periods of unemployment even if you have included a resume" (Dkt. 52, Ex. 7, Att. 2B).  The general employment application also stated that "[a]ny withholding of information . . . on this application . . . could result in rejection for employment . . . ." (Dkt. 52, Ex. 7, Att. 2B). The "employment portion" of the driver's application also instructs applicants to "provide the [requested] information on all employers during the preceding 3 years" (Dkt. 52, Ex. 7, Att. 2C).

### 2.   Applicants

The relevant candidates for the two driver positions are Anthony Palmer, Renninger and Hernandez.

### a.   *Palmer*

On July 3, 2007, Palmer responded to Wilsonart's online ad and applied for one of the driver positions in Fort Myers (Dkt. 52, Ex. 4, pp. 8-10).  Palmer did not previously work for Dynamex (Dkt. 52, Ex. 1, p. 59).  Palmer submitted both the general employment application and driver application (Dkt. 52, Ex. 7, Att. 4A).  At the time of submission, Palmer had been unemployed for approximately four months.  *Id*.  Palmer's general application included gaps in his employment between August 2005 and February 2006.  *Id*.  Palmer also submitted his employment history form with the driver application where he listed names, addresses and phone numbers for his employers from 2007 to 1997 (Dkt. 52, Ex.7, Att. 6).

In August 2007, Grear reviewed Palmer's applications for the driver position (Dkt. 52, Ex. 1, p. 27; Ex. 4A).   On August 3, 2007, Palmer completed additional forms that would permit Williams to conduct a background check (Dkt. 62, Ex. 28).   Palmer was also interviewed by Grear (Dkt. 62, Ex. 26, p. 11).   After being instructed by Williams to do so, Grear asked Palmer to provide information explaining the gaps in his employment history (Dkt. 52, Ex. 1, p. 30).   On August 8, 2007, Palmer submitted a handwritten note explaining the gaps in his employment (Dkt. 62, Ex. 29; Ex. 38).

Palmer then completed forms regarding his driving record and certification of compliance with the driver license requirements on August 23, 2007.  *Id*.  After meeting with Holloway,[3] Palmer was hired for the driver position on August 27, 2007 (Dkt. 52, Ex. 7, Att. 22).   Three days prior to his hiring, Palmer received a traffic ticket for disobeying a traffic signal (Dkt.63, Ex. 31).   Palmer did not report  any accidents during the preceding three years.  *Id*.; *see* Dkt. 62, Ex. 25.

### b.    *Renninger*

On August 2, 2007, Renninger submitted his driver application for the position with Wilsonart to Grear (Dkt. 52, Ex. 7, Att. 5A).   At the time of submission, Renninger had the Smith Safety Certification, no accidents, but no hazmat endorsement.   *Id*.   Along with the driver application, Renninger submitted his employment history form that had gaps and did not provide addresses for his employers (Dkt. 61, Ex. 20).   After receiving the application via fax from Grear, Williams noted that Renninger had gaps in his employment history (Dkt. 52, Ex. 6, p. 38).  Williams

---

[3] Palmer met with Trevor Noe initially (Dkt. 62, Ex. 26, p. 11).  However, Palmer met with Noe because Holloway was unable to meet with Palmer on the day that she originally scheduled her meeting with him, and she asked Noe to meet with Palmer in her stead (Dkt. 52, Ex. 3, pp. 52, 89). Holloway met with Palmer shortly thereafter.  *Id*. at pp. 52, 89-90.

then directed Grear to have Renninger explain the gaps in his employment history (Dkt. 52, Ex. 1, pp. 29-30).  Renninger supplemented the application by explaining the gaps, and Grear faxed the information to Williams on August 8, 2007 (Dkt. 61, Ex. 20).  Renninger did not include, however, a street address for his employer between 1992 and 2004 (Dkt. 61, Ex. 20).

Renninger passed the hazardous materials test on August 20, 2007 (Dkt. 52, Ex. 1, p. 41; Dkt. 52, Ex. 7, Att. 16).   On August 22, 2007,[4] Renninger submitted his general application for employment to Wilsonart (Dkt. 52, Ex. 7, Att. 5A).  On the general application, Renninger listed his three previous employers, dating back to 1992.  *Id*.  Renninger did not include a street address for his employer between 1992 and 2004.  *Id*.  At the end of August, Renninger met with Holloway and was hired on September 4, 2007 (Dkt. 60, Ex. 12, pp. 14-15; Dkt. 52, Ex. 7, Att. 22).

### c.   *Hernandez*

On August 13, 2007, Plaintiff completed the driver  application for the Wilsonart driver position and gave it to Grear (Dkt. 52, Ex. 2, p. 85, Att. 14; Dkt. 52, Ex. 8).[5]  On his application, Hernandez stated that he had been involved in a rear-end collision on August 10, 2006.  *Id*.  Additionally, Hernandez listed Dynamex and ZMG Trucking as his two previous employers with no addresses or contact information (Dkt. 64, Ex. 40).  Hernandez had the hazmat endorsement and a Class B CDL (Dkt. 58, Ex. 3).  Hernandez gave this application to Grear (Dkt. 52, Ex. 2, p. 86).  Grear noted that the application  listed ZMG Trucking but did not include any additional information (Dkt. 52, Ex. 1, pp. 32-33).

---

[4]  The application was dated August 21st, but signed on August 22nd.

[5]  On the same day, Grear briefly spoke to Plaintiff about the driver position (Dkt. 52, Ex. 7, Att. 15).  The parties dispute whether this conversation was an interview for the position.

Three days later on August 16th, an employment history form for Hernandez was faxed to Wilsonart (Dkt. 65, Ex. 41).   On the form, there were addresses listed for Dynamex and ZMG Trucking.  *Id*.  Hernandez worked for Dynamex for nearly two years and for ZMG Truck for either two to three years.  *Id*.

Hernandez then completed the general application for employment on August 24, 2007 (Dkt. 52, Ex. 2, p. 89, Att. 15; Dkt. 52, Ex. 8).  Hernandez gave this general application to Grear (Dkt. 52, Ex. 2, p. 89).  This application did not list any addresses for his previous employers.  *Id*.

Hernandez was not selected for the positions (Dkt. 16, ¶15).  On August 29, 2007, Plaintiff was notified that his last day would be August 30, 2007 (Dkt. 52, Ex. 2, pp. 93, 96).

## II.    **PROCEDURAL HISTORY**

On November 13, 2009, Plaintiff filed this action alleging national origin discrimination for Defendant's failure to hire him as a truck driver (Dkt. 1).  On February 8, 2010, Defendant filed its answers and affirmative defense (Dkt. 16).  Subsequently, Defendant filed the Motion for Summary Judgment, to which Plaintiff responded in opposition.

## III.    **STANDARD**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(e).  The moving party bears the initial burden of stating the basis for its motion and identifying those portions of the record demonstrating the absence of genuine issues of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).  That burden can

be discharged if the moving party can show the Court that there is "an absence of evidence to support the nonmoving party's case." *Id.* at 323, 325.

When the moving party has discharged its burden, the nonmoving party must then designate specific facts showing that there is a genuine issue of material fact. *Id.* at 324. Issues of fact are genuine only if a reasonable jury, considering the evidence presented, could find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Material facts are those that will affect the outcome of the trial under governing law. *Id.* at 248. In determining whether a material fact exists, the court must consider all the evidence in the light most favorable to the nonmoving party. *Sweat v. Miller Brewing Co.*, 708 F.2d 655, 656 (11th Cir. 1983).

## IV.   <u>ANALYSIS</u>

Plaintiff alleges two counts of national origin discrimination under Title VII and the FCRA. "Because the FCRA is modeled on Title VII, Florida courts apply Title VII case law when they interpret the FCRA." *Jones v. United Space Alliance, L.L.C.*, 494 F.3d 1306, 1310 (11th Cir. 2007); *see Harper v. Blockbuster Entertainment Corp.*, 139 F.3d 1385, 1388 (11th Cir. 1998)(same). Therefore, the following analysis applies to both counts of Plaintiff's complaint.

"Whether an employer intentionally discriminated against an employee or potential employee is a question of fact, which may be proved through direct or circumstantial evidence." *E.E.O.C. v. Joe's Stone Crabs, Inc.*, 296 F.3d 1265, 1272 (11th Cir. 2002). "Absent direct evidence of an employer's discriminatory motive, a plaintiff may establish his case through circumstantial evidence, using the burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973)." *Godoy v. Habersham County*, 211 Fed. Appx. 850, 853 (11th Cir. Dec. 12, 2006)(citing *Joe's Stone Crabs, Inc.*, 296 F.3d at 1272).

"By establishing a *prima facie* case, the plaintiff creates a rebuttable presumption that the employer unlawfully discriminated against [him]." *Joe's Stone Crabs*, 296 F.3d at 1272 (citing *U.S. Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 714, 103 S. Ct. 1478, 75 L. Ed. 2d 403 (1983)).

"The burden then shifts to the employer to rebut this presumption by producing evidence that its action was taken for some legitimate, non-discriminatory reason." *Id.* (citing *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 254-55, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981)). "Should the employer meet its burden of production, the presumption of discrimination is rebutted, and the inquiry 'proceeds to a new level of specificity,' in which the plaintiff must show that the proffered reason really is a pretext for unlawful discrimination." *Id.* (quoting *Burdine*, 450 U.S. at 253, 101 S. Ct. 1089, 67 L. Ed. 2d 207). "There are no genuine issues for trial unless the non-moving party establishes, through the record presented to the court, that it is able to prove evidence sufficient for a jury to return a verdict in its favor." *Cohen v. United American Bank of Cent. Fla.*, 83 F.3d 1347, 1349 (11th Cir. 1996).

### A.    *Prima Facie* Case of National Origin Discrimination

In a failure-to-hire case, the plaintiff establishes a *prima facie* case by demonstrating that: (1) he was a member of a protected class; (2) he applied and was qualified for a position for which the employer was accepting applications; (3) despite his qualifications, he was not hired; and (4) the position remained open or was filled by another person outside his protected class. *Walker v. Prudential Property and Casualty Ins. Co.*, 286 F.3d 1270, 1274-75 (11th Cir. 2002).

In this case, there is no dispute that Plaintiff was a member of a protected class, that he applied for the position and was not hired and that a person outside of his protected class was hired

to fill the position (Dkt. 51, p. 16).  The only disputed element is whether Plaintiff met Defendant's qualification standards for the driver position.  *Id*.

Defendant argues that Plaintiff did not meet its qualification standards for the driver position for three reasons.  First, Defendant contends that Plaintiff failed to provide the necessary information to confirm his employment during the three years preceding his application, specifically the names, addresses and telephone numbers of ZMG Trucking.  *Id*. at p. 17-18.  Second, Defendant notes that Plaintiff has not provided any evidence that Defendant knew that Plaintiff possessed the requisite qualifications for the driver position.  *Id*. at pp. 18-19.  Third, Defendant argues that Plaintiff cannot show that he was performing his duties as a driver under the Dynamex contract to Defendant's satisfaction.  *Id*. at pp. 19-20.  Fourth, Defendant notes that there is no evidence in the record that greater "seniority" with Dynamex equated to being "qualified" for employment with Defendant.  *Id*. at p. 20.  In opposition, Plaintiff first argues that he met the qualifications stated in the advertisement and job description (Dkt. 66, p. 22).  Second, Plaintiff contends that based on his two years at Dynamex using the same DOT qualification standards and driving for ZMG Trucking previously, he met the minimum qualifications and was told that his application would be forwarded to Williams for background screening.  *Id*.  Third, Plaintiff states that an accurate job application is not a qualification requirement, and if it is, Defendant relaxed its standards for other non-Hispanic candidates.  *Id*.  at pp. 22-23.

Generally, affirmative proof of qualification is required in failure to hire cases.  *See Pace v. Southern Ry. Sys.*, 701 F.2d 1383, 1386 (11th Cir. 1983); *see also Ford v. Gen. Motors. Corp.*, 656 F.2d 117, 119 (5th Cir. 1981)("[The plaintiff] must adduce evidence to show that he is qualified for

the position at issue, not evidence that another employee is not.").[6] If a plaintiff can demonstrate that he meets the qualifications for a position as outlined by a job description drafted by the defendant, then the plaintiff has created a genuine issue of material fact as to whether he was minimally qualified for the position in question. *See Archie v. Home-Towne Suites, LLC*, 749 F. Supp. 2d 1308, 1316-17 (M.D. Ala. 2010)(noting that the plaintiff's experience in motel sales in comparison to the defendant's job description that specifically stated a preference for sales experience in the hotel industry created a genuine issue of fact as to whether the plaintiff was minimally qualified for the position in question).

Defendant notes that Plaintiff did not submit the necessary information on his driver application regarding his employers during the preceding three years as required by the DOT. An applicant must provide "[a] list of the names and addresses of the applicant's employers during the 3 years preceding the date the application is submitted; the dates he or she was employed by that employer, [and] the reason for leaving the employ of that employer . . . ."[7] 49 C.F.R. § 391.21(b)(1)(i)-(iii). Based on the employment history form that was faxed to Defendant on August

---

[6] The Eleventh Circuit has adopted as binding precedent all decisions of the former Fifth Circuit decided prior to October 1, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981)(en banc).

[7] Additionally, "[a]fter October 29, 2004, [the applicant must state] whether the, (A) [a]pplicant was subject to the FMCSRs while employed by that previous employer, (B) [j]ob was designated as a safety sensitive function in any DOT regulated mode subject to alcohol and controlled substances testing requirements by 49 CFR part 40 . . . ." 49 C.F.R. § 391.21(b)(1)(iv). Defendant does not state that Plaintiff failed to comply with this provision, so the Court does not address it.

16, 2007,[8] Plaintiff provided the necessary information to comply with the portions of the DOT regulations that Defendant claims he failed to meet to demonstrate that he was qualified.  Although an employer may require more information than that required by the DOT, *see id.* at § 391.21(c), the record does not show that after receiving the employment history form with the addresses for Plaintiff's employers for the past three years that Grear or anyone else asked Plaintiff to provide a contact person or phone number.

Additionally, the advertisement for the driver position stated that the applicant must have a Class B CDL with a hazmat endorsement and one year of driving experience.  Based on the record, Plaintiff had the Class B CDL with hazmat endorsement and at least one year of driving experience. Therefore, the Court finds that Plaintiff has created a genuine issue of material fact as to whether he was minimally qualified for the truck driver position.

### B.      Legitimate, Non-Discriminatory Reason

Defendant states that its legitimate, non-discriminatory reason for not hiring Plaintiff is that Plaintiff was not one of the top candidates for the driver position, and Plaintiff did not meet Defendant's qualification standards (Dkt. 51, p. 21).  Specifically, Grear concluded that Plaintiff did not have the relevant, verified work experience and had performance problems while with Dynamex. *Id*.

In opposition, Plaintiff argues that Defendant manufactured its "legitimate" reasons for rejecting Plaintiff (Dkt. 66, p. 23).  Specifically, Grear testified that he never told anyone that he

---

[8] In his opposition, Plaintiff notes that Wilsonart had a copy of the supplemental form with Dynamex and ZMG Trucking's addresses and failed to produce the document during discovery (Dkt.66, p.22).  In its Reply, Defendant notes that the supplemental form was found in Renninger's personnel file and appeared to have been misplaced because Plaintiff's fax did not have a cover sheet or any identifying information linking it to his application (Dkt. 70, pp. 3-4; Dkt. 52, Ex. 11).

rejected Plaintiff based on any alleged customer complaints and that Defendant's EEOC response and answers to interrogatories do not list any alleged complaints, accidents or poor performance at Dynamex as a basis for rejecting Plaintiff. *Id.* at pp. 23-24; *see* Dkt. 59, Ex. 9, p. 22. Furthermore, Plaintiff notes that Holloway testified that she had never seen Plaintiff's application, had never interviewed Plaintiff and that no one told her about customer complaints playing a role in the decision not to hire Plaintiff as a driver. *Id.* at p. 24. The Court finds that Defendant has articulated a legitimate, non-discriminatory reason for not hiring Plaintiff.

### C.    Pretext

After the employer articulates a legitimate, non-discriminatory reason for its action, the employee must provide evidence sufficient to permit a reasonable fact finder to conclude that the legitimate reasons given by the employer were not its true reasons, but instead were a pretext for discrimination. *Lane v. Broward County, Fla*, 411 Fed. Appx. 272, 273-74 (11th Cir. Jan. 28, 2011)(citing *Vessels v. Atlantic Indep. Sch. Sys.*, 408 F.3d 763, 771 (11th Cir. 2005)). "In attempting to rebut the employer's proffered reason, the plaintiff is not allowed to recast the employer's reasons or to substitute [his] business judgment for the employer's judgment." *Id.* (citing *Chapman v. AI Transport*, 229 F.3d 1012, 1030 (11th Cir. 2000))(alteration added). The plaintiff's pretext evidence must demonstrate that a reasonable fact finder could conclude that the employer's proffered legitimate reason was not credible because of its weaknesses, implausibilities, inconsistencies or contradictions. *See Vessels*, 408 F.3d at 771 (11th Cir. 2005).

"If the employer proffers more than one legitimate, nondiscriminatory reason, the plaintiff must rebut each of the reasons to survive a motion for summary judgment." *Crawford v. City of Fairburn, Ga.*, 482 F.3d 1305, 1308 (11th Cir.2007). Notably, at the rebuttal stage, relative

qualifications may be considered once the employer presents its legitimate, non-discriminatory reasons for not hiring the plaintiff based on his qualifications. *See Walker v. Mortham*, 158 F.3d 1177, 1190 (11th Cir. 1998).[9] "A plaintiff must show that the disparities between the successful applicant's and [his] own qualifications were 'of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff.'" *Brooks v. County Com'n of Jefferson County, Ala.*, 446 F.3d 1160, 1163 (11th Cir. 2006)(quoting *Cooper v. S. Co.*, 390 F.3d 695, 732 (11th Cir. 2004), *cert. denied*, 546 U.S. 960, 126 S. Ct. 478, 163 L. Ed. 2d 363 (2005))(alteration added).

Plaintiff presents four reasons to establish that Defendant's legitimate, non-discriminatory reasons are pretextual. First, Plaintiff contends that Defendant shifts its explanations for not hiring him and provides inconsistent statements regarding its actions (Dkt. 66, pp. 24-25). Second, Plaintiff argues that Defendant treated non-Hispanic applicants better by deviating from the hiring process, making misrepresentations about Plaintiff's application and not requiring the hazmat endorsement for Renninger. *Id.* at pp. 25-27. Third, Plaintiff argues that no performance issues were ever discussed with him when he worked for Dynamex. *Id.* at p. 27. Fourth, Plaintiff contends that the record shows that Renninger and Palmer were less qualified because: 1) Plaintiff had his CDL longer than they had their CDLs; 2) Renninger's eighteen years of driving experience did not relate to commercial driving; and 3) Plaintiff had done the job for Defendant as a driver for Dynamex longer than both Renninger and Palmer. *Id.* at pp. 27-28.

---

[9] The plaintiff does not have the burden of proving relative qualifications at the *prima facie* stage of the *McDonnell-Douglas* framework. *Id*. at 1191.

Based on the record, the Court finds that Plaintiff has failed to establish that the reasons given by Defendant for not hiring him are pretext for discrimination.  Specifically, the Court finds that Plaintiff failed to establish that no reasonable person would have selected Renninger or Palmer over Plaintiff based on their qualifications for the driver position.

### 1.     *Defendant did not present shifting reasons for its employment decision.*

Plaintiff relies on *Bechtel Const. Co. v. Secretary of Labor*, 50 F.3d 926, 935 (11th Cir. 1995)[10] to support his assertion that Defendant is now presenting shifting reasons for its decision not to hire him for the driver position.  However, *Bechtel* is distinguishable because the defendant in that case gave one reason for the plaintiff's termination when asked by the administrative law judge, and then, on appeal, the defendant gave a completely different reason, without making reference to its previous reason for the layoff.  *Id*. at p. 935.[11]  Furthermore, the administrative law judge specifically asked the employer whether the terminated employee's job performance or medical condition were issues in the case, and the employer denied that they were.  *Id*.  Because the employer did not present

---

[10]  Plaintiff also relies on *EEOC v. Sears Roebuck & Co.*, 243 F.3d 846 (4th Cir. 2001) to support his argument that Defendant is presenting shifting reasons for the decision not to hire him, which establishes pretext.  Although non-binding authority, the Court notes that *Sears Roebuck* emphasized that if an employer provides different and inconsistent explanations for its employment decision, then such evidence could lead a fact finder to conclude that the asserted justification is false.  *Id*. at 852-53 (citations omitted).  Here, Defendant has not presented different and inconsistent reasons for its employment decision.

[11]  *Id*. ("During the proceeding, the ALJ asked Bechtel whether Nichols' job performance or medical condition of arthritis were issues in the case.  Bechtel indicated that they were not, attributing his dismissal rather to his attitude, his 'gung ho nature.'" Yet, on appeal, petitioner's argument is cast entirely as if the layoff was due to poor job performance, exacerbated by Nichols' arthritic condition.  On appeal Bechtel argues that it laid off Nichols before any other crew members because 'his job performance paled in comparison to the other crew members.'  Given that, on the record, Bechtel has indicated that these issues were not factors in Nichols termination, we will not now consider them.").

-15-

the plaintiff's job performance as a reason for the termination before the ALJ, the appellate court did not consider it as a legitimate, non-discriminatory reason. *Id.*

Here, Defendant does not shift its reason for not hiring Plaintiff. Defendant maintains that Plaintiff was not one of the top two candidates for the positions and he failed to meet Defendant's qualification standards; i.e., he did not provide verifiable employment information. Defendant continues to state that Plaintiff's lack of verified work experience played a role in the decision not to hire him for the driver position. Here, Defendant explains why Plaintiff was not one of the top two candidates by discussing his job performance (Dkt.70, Ex. 2). Therefore, Plaintiff has failed to establish that Defendant presented shifting reasons for its employment decision.

### 2. *Application Process for Non-Cubans.*

Plaintiff argues that Defendant relaxed its application process for non-Cubans and gave preferential treatment to Renninger and Palmer. Plaintiff lists several reasons to support his argument that these individuals were given preferential treatment:[12] 1) Plaintiff was told by Grear that his application was acceptable; 2) Renninger was allowed to continue as a candidate despite the fact that he did not have the hazmat endorsement, his driver's application did not list any addresses for prior employers other than Dynamex, and he had gaps in his employment history; 3) Palmer had gaps in his employment history, was untruthful about the reason he left a prior employer, and "had an accident just three days before he started to work for" Defendant;[13] and 4) both non-Cuban

---

[12] Plaintiff notes that Defendant failed to acknowledge that it had Plaintiff's employment history, listing addresses for ZMG Trucking and Dynamex. As discussed, *supra*, the record clearly reflects that Defendant was on notice of Plaintiff's employment history.

[13] The Court notes that Plaintiff's description of Palmer's traffic citation is not accurate. *See* Dkt. 66, Ex. 31.

candidates did not have to confirm the handwritten notes in their files explaining gaps in their employment, did not have to interview with Grear, as Plaintiff had, and did not face being removed from the applicant pool for deficiencies in their applications (Dkt. 66, pp. 25-27).

First, the record indicates that Palmer and Renninger applied for the position several weeks before Plaintiff applied.  Several of the deficiencies in their applications to which Plaintiff directs the Court occurred before Plaintiff ever submitted an application for the driver position.  Even when Plaintiff submitted his application on August 13th, the record indicates that he supplemented his application, just like Renninger and Palmer did, on August 16th by submitting additional information regarding his previous employers.  Plaintiff did not submit the general application for employment until August 24, 2007.  The exhibits show that all of the candidates were required to submit certain information to Defendant to be considered for the position, and all did.  If there were deficiencies, all were able to supplement their applications.[14]

Second, the record does not indicate that Plaintiff, Renninger or Palmer were ever removed from the applicant pool based on deficiencies in their applications.  Plaintiff submitted his application weeks after Renninger and Palmer, who had already begun to supplement their applications.  When the decision was made on who to hire, all of the candidates, including Plaintiff, had submitted general and driver applications in addition to supplements.  Furthermore, all of the candidates had their hazmat endorsements at the time the decision to hire was made.

---

[14] Plaintiff cites to various cases to demonstrate that a deviation from the employer's policies may suggest discrimination.  *See Morrison v. Booth*, 763 F.2d 1366 (11th Cir. Ala. 1985); *Jean v. Nelson*, 711 F.2d 1455 (11th Cir. 1983); *Loyle v. Mantua Mfg. Co.*, 2010 WL 447789 (M.D. Fla. Jan. 25, 2010).  However, Plaintiff has not established or shown that any deviation in the policy at the time that he applied for the position adversely affected him or that any deviations demonstrate discrimination.

Third, the Court notes although Grear was supposed to interview and screen all of the applicants for the driver position, Renninger did not interview with Grear. Palmer, however, did interview with Grear. Based on this information, Plaintiff did not present facts that show that the hiring process was relaxed for non-Cubans because Palmer, in fact, is not Cuban and met with three people, Grear, Noe and Holloway, as part of the hiring process. *See* Dkt. 62, Ex. 28.

Fourth, Plaintiff's additional arguments only challenge the employer's business judgment. For example, Palmer stated that he took a leave of absence from a previous job because he had a tragic death in his family that caused him to be away from work (Dkt. 62, Ex. 28). The employment background check states that he was "discharged" from this particular job (Dkt. 63, Ex. 30). How Wilsonart chose to interpret this information is within its business judgment. *See Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1187 (11th Cir. 1984)("While an employer's judgment or course of action may seem poor or erroneous to outsiders, the relevant question is simply whether the given reason was a pretext for illegal discrimination. The employer's stated legitimate reason . . . does not have to be a reason that the judge or jurors would act on or approve.")(internal quote omitted).

Additionally, Plaintiff attempts to compare Palmer's traffic citation on August 24, 2007 to his traffic citation in June 2007. However, Plaintiff also reported on his driver application that he was involved in a rear-end collision on August 10, 2006. *See* Dkt. 64, Ex. 40. Defendant is permitted to use its business judgment when considering these traffic violations and other information provided by the applicants in making a hiring decision. *See Damon v. Fleming Supermarkets of Florida, Inc.*, 196 F.3d 1354, 1361 (11th Cir. 1999)("We are not in the business of

adjudging whether employment decisions are prudent or fair.  Instead, our sole concern is whether

unlawful discriminatory animus motivates a challenged employment decision.").

### 3.    *Performance Issues*

Third, Plaintiff emphasizes that he was never told of any customer complaints regarding his

performance while working for Dynamex, that he was not fired for poor performance, and that he

was never removed from the Dynamex contract for performance issues (Dkt. 66, p. 27).

Furthermore, Plaintiff notes that he was praised for his work performance by both Dynamex and

Wilsonart, including when Holloway re-assured him that because of his good work when the

Dynamex contract ended, he would not lose his job.[15]  *Id*.

The evidence before the Court shows that there is a dispute as to whether Renninger

addressed performance issues with Plaintiff.  However, Grear states that he considered Plaintiff's

and Renninger's performance with Dynamex as an additional reason for not selecting Plaintiff to be

interviewed by Holloway.  Even assuming that Plaintiff has established that his performance was not

poor, Plaintiff must establish pretext as to the additional reasons given for Defendant's failure to hire

him, including his qualifications and lack of verified employment.  *See Crawford*, 482 F.3d at 1308.

### 4.    *Qualifications*

Fourth, Plaintiff notes that: 1) he had his CDL longer than both of the successful applicants;

2) Renninger's eighteen years of driving experience did not relate to commercial driving; and 3)

---

[15]  Based on the record, Holloway did not "reassure" Plaintiff that because of his good work he would not lose his job once the Dynamex contract ended.  *See* Dkt. 66, Ex.9, p. 54 ("[Holloway] had talked about [Plaintiff] and said that . . . he has the opportunity to become a Wilsonart employee and . . . he might be able to be, but didn't say that he would be hired by Wilsonart.").

Plaintiff had done the job for Dynamex longer than both Renninger and Palmer. *Id*. at pp. 27-28. Based on this evidence, Plaintiff argues that he was more qualified for the driver position.

First, it is uncontested that Plaintiff had his CDL longer than Renninger and Palmer. Second, Plaintiff challenges Renninger's driving experience of eighteen years as being unrelated to commercial driving. The record does not support this assertion. Renninger testified that his driving experience was for employers. Dkt. 60, Ex. 12, p. 48. Although he had not driven for employers consecutively during his eighteen years of employment and did not always hold the title of "driver," Renninger stated that he held positions that involved driving, including his position with Dynamex. *Id*. The other candidate, Palmer, had at least eight years of professional driving experience. In contrast, Plaintiff's application reflected only four or five years of professional experience. [16]

Third, Williams stated that Dynamex drivers would receive priority if they met Defendant's qualifications. Based on the record, in addition to having the hazmat endorsement and one year of driving experience, the successful candidate would not have any chargeable accidents in the preceding three years of his submission. *See* Dkt. 66, Ex. 17. Even assuming that Plaintiff met the qualifications with the DOT, the Class B CDL with a hazmat endorsement and one year of driving

---

[16] Although Plaintiff states in an unsworn declaration that he has seventeen years of driving experience, the Court has not considered this declaration because it does not comply with the federal statute (Dkt. 58, Ex. 1). Unsworn declarations filed under penalty of perjury, if executed in the United States, are properly submitted if they include, in substantially the same form, the following: "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date). (Signature)." 28 U.S.C. §1746(2). Plaintiff's unsworn statement does not include a substantially similar statement and does not include a date of execution. Therefore, it does not comply with Fed. R. Civ. P. 56 and cannot be considered. *Beard v. Green*, No. 08-22284-CIV, 2010 WL 411084 at *10 (S.D. Fla. Jan. 29, 2010).

Additionally, the Court sustains the Plaintiff's objections as to ¶7 and part of ¶6 of Grear's declaration and ¶5 of Holloway's declaration. The Plaintiff's objection is overruled as to the statements in Grear's declaration regarding Renninger's performance under the Dynamex contract, as Grear was Renninger's supervisor.

experience, the record shows that he was involved in a rear-end collision on August 10, 2006.  As such, Plaintiff has not established that Defendant's legitimate, non-discriminatory reason is pretextual.  Therefore, since no genuine issues of material fact exist, Defendant is entitled to a judgment in its favor as a matter of law.

In its Motion for Summary Judgment, Defendant also requests, alternatively, entry of partial summary judgment precluding Plaintiff from recovering any amount of punitive damages and limiting the time period for which Plaintiff may recover lost wages.  Since the Court is granting Defendant's Motion for Summary Judgment as to liability, it need not address these issues of damages.

Accordingly, it is hereby **ORDERED:**

1.    Defendant's Motion for Summary Judgment (Dkt. 51) is **GRANTED**.  Plaintiff's Complaint is **DISMISSED**.

2.    The Clerk is directed to terminate all pending motions, enter judgment accordingly, and **CLOSE** this case.

**DONE AND ORDERED** at Ft. Myers, Florida, on July 8, 2011.

Charlene Edwards Honeywell
United States District Judge

COPIES TO:
COUNSEL OF RECORD